**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DON WILKIE,** | : | **No. 3:14cv462** |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| **v.** | : | |
| | : | |
| **LUZERNE COUNTY and** | : | |
| **AMERICAN FEDERATION OF STATE,** | : | |
| **COUNTY AND MUNICIPALITY** | : | |
| **EMPLOYEES,** | : | |
| **Defendants** | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## MEMORANDUM

Plaintiff Don Wilkie (hereinafter "plaintiff") asserts the Defendant

American Federation of State, County, and Municipality Employees'

(hereinafter "Union") violated his rights under the Americans with Disabilities

Act, 42 U.S.C. § 12101, *et seq*. (hereinafter "ADA") and the Pennsylvania

Human Relations Act, 43 PA. STAT. ANN. § 951, *et seq*. (hereinafter "PHRA")

by denying him leave from the Union's sick bank.  Before the court for

disposition is the Union's motion for summary judgment.  (Doc. 35).  For the

reasons that follow, the court will deny the Union's motion.

## Background

Defendant Luzerne County employed plaintiff as a 911 dispatcher from

June 2002 until his termination on May 22, 2012.  (Doc. 37, Def. Luzerne

County's Statement of Undisputed Material Facts ¶ 3).  The Union represented

plaintiff as his collective bargaining agent.  (Doc. 35-5, Union's Statement of

Undisputed Material Facts (hereinafter "SOF") ¶ 1).[1]  This case arises from plaintiff's requests for leave from the Union's sick bank to treat his anxiety.[2] (SOF ¶¶ 2-3).

On November 15, 2011, plaintiff submitted an application for sick bank time to the Luzerne County Sick Day Bank Committee (hereinafter "committee").  (SOF ¶ 17).  On the application, plaintiff's physician stated, "Donald is suffering from anxiety.  Requesting one month of leave to get counseling," and listed plaintiff's return to work date as December 12, 2011. (SOF ¶ 18).[3]  A doctor's note accompanying the application stated, "Donald will be out of work for one month due to multiple medical problems."  (SOF ¶ 19).  Plaintiff continued to work through November and December of 2011. (SOF ¶ 22).

---

[1]  We cite to the Union's SOF for statements which plaintiff generally agrees with in his response (Doc. 44).

[2]  The collective bargaining agreement (hereinafter "CBA") between the Union and Luzerne County creates, in Article VII, a "sick day bank".  (SOF ¶ 3). The sick day bank serves as the Union's long term disability plan enabling employees who are experiencing a long term disability to access additional sick days after the employee has used up their own sick and leave time. (SOF ¶ 3).  The Union's executive director and the employer's director of human resources serve as plan administrators.  (Id.)

[3]  Plaintiff's anxiety affected his ability to handle stressful situations effectively and caused sweating, chest pain, blurry vision, and stomach pains. (SOF ¶ 21).

The committee met on December 9, 2011 to review plaintiff's application. (SOF ¶ 25).  The committee, however, did not approve plaintiff's application. (SOF ¶ 26).  Instead, the committee directed plaintiff to provide additional information regarding his need for leave and ability to currently perform his work duties.  (SOF ¶ 27).

On December 12, 2011, plaintiff submitted a second application for sick bank benefits.  (SOF ¶ 28).  Plaintiff's second application requested thirty (30) days of leave to obtain counseling for his anxiety.  (SOF ¶ 29).  On December 20, 2011, the committee met and denied plaintiff's second application for sick bank leave.  (SOF ¶ 34).

Plaintiff appealed the committee's unfavorable decision and attended an appeals hearing on February 15, 2012.  (SOF ¶¶ 35-36).  On February 16, 2016, the committee notified plaintiff that its decision would stand and that his request for sick bank time had been denied.  (SOF ¶ 40).

On March 12, 2014, plaintiff filed an eight-count complaint.[4]  Relevant to the instant motion, Count VII alleges the Union discriminated against plaintiff because of his disability in violation of the ADA.  (Doc. 1, Compl. ¶¶ 70-71).

---

[4]  Counts I-VI allege disability discrimination, retaliation and failure to accommodate under the ADA and PHRA against Luzerne County.  Luzerne County has moved for summary judgment on these claims and they will be discussed in a separate memorandum.

Count VIII also asserts a disability discrimination claim against the Union under the PHRA.  (Id. ¶¶ 72-73).  At the conclusion of discovery, the Union moved for summary judgment on plaintiff's disability discrimination claims under the ADA and PHRA.  The parties briefed their respective positions and the matter is ripe for disposition.

**Jurisdiction**

As plaintiff brings suit pursuant to the ADA, 42 U.S.C. § 12112, *et seq.*, we have federal question jurisdiction.  See 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").  We have supplemental jurisdiction over plaintiff's state law claim pursuant to 28 U.S.C. § 1367.

**Legal Standard**

Granting summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  See Knabe v. Boury, 114 F.3d 407, 410 n.4 (3d Cir. 1997) (citing FED. R. CIV. P. 56(c)).  "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for

4

summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986) (emphasis in original).

In considering a motion for summary judgment, the court must examine the facts in the light most favorable to the party opposing the motion. <u>Int'l Raw Materials, Ltd. v. Stauffer Chem. Co.</u>, 898 F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the nonmoving party. <u>Anderson</u>, 477 U.S. at 248. A fact is material when it might affect the outcome of the suit under the governing law. <u>Id.</u>  Where the nonmoving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by establishing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. <u>Celotex v. Catrett</u>, 477 U.S. 317, 322 (1986). Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories demonstrating that there is a genuine issue for trial. <u>Id.</u> at 324.

**Discussion**

The Union moves for summary judgment on plaintiff's disability discrimination claim.[5]  Pursuant to the ADA, an employer cannot discriminate against a qualified individual with a disability because of his disability in regard to his employment.  42 U.S.C. § 12112(a).  A plaintiff may assert an ADA disability discrimination claim with direct or circumstantial evidence.  Here, plaintiff argues that circumstantial evidence establishes his ADA disability discrimination claim.

Where the complaining party relies upon circumstantial evidence to support a disability discrimination claim, the Third Circuit Court of Appeals has approved the use of the McDonnell Douglas burden-shifting framework. Shiring v. Runyon, 90 F.3d 827, 831 (3d Cir. 1996).  First, a plaintiff seeking recovery pursuant to the ADA must establish a *prima facie* case of discrimination by demonstrating that (1) he is disabled within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) he has suffered an otherwise adverse employment decision as a result of discrimination.  Id.

---

[5]  Our analysis under the ADA applies equally to plaintiff's claims under the PHRA.  Gafliardo v. Connaught Labs., Inc., 311 F.3d 565, 568 n.2 (3d Cir. 2002) (citing Kelly v. Drexel Univ., 94 F.3d 102, 105 (3d Cir.1996)).

Once the plaintiff establishes this *prima facie* case, the burden of production shifts to the employer to "proffer a legitimate, non-discriminatory reason for the adverse employment decision." Abramson v. William Patterson Coll., 260 F.3d 265, 281-82 (3d Cir. 2001).  An employer need only introduce "evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision." Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994).  "The employer need not prove that the tendered reason **actually** motivated its behavior, as throughout this burden-shifting paradigm the ultimate burden of proving intentional discrimination always rests with the plaintiff."  Id. (emphasis in original).

Should the employer meet this burden, the burden of production shifts back to the plaintiff to establish that a jury "could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating factor or determinative cause of the employer's action." Id. at 764.  The court will address each step of this burden-shifting framework in turn.

## A.  Plaintiff's *prima facie* case

A plaintiff establishes a *prima facie* case of ADA disability discrimination when he demonstrates that: 1) he is disabled within the meaning of the ADA;

7

2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and 3) he has suffered an otherwise adverse employment decision as a result of discrimination. Shiring, 90 F.3d at 831.

The Union argues as follows: 1) plaintiff did not suffer a disability under the ADA and 2) he did not suffer an adverse employment action.  The court will address each argument *in seriatim*.

### 1. Plaintiff's disability

The first element of plaintiff's *prima facie* case requires him to establish that he is disabled under the ADA.  Under the ADA, a "disability" is "a physical or mental impairment that substantially limits one or more major life activities . . . a record of such an impairment; or . . . being regarded as having such an impairment[.]"  42 U.S.C. § 12102(1)(A)-(C).  Federal regulations provide that "major life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working."  42 U.S.C. § 12102(2)(A).  Major life activities also include "the operation of a major bodily function, including but not limited to . . . neurological" processes.  42 U.S.C. § 12102(B).

8

In the instant matter, plaintiff claims that his anxiety substantially limited the major life activity of thinking.  Thinking is a major life activity under the ADA.  42 U.S.C. § 12102(2)(A); <u>Taylor v. Phoenixville Sch. Dist.</u>, 184 F.3d 296, 307 (3d Cir. 1999) (stating that "thinking" is a major life activity under the ADA).  Regarding how plaintiff's anxiety substantially limited his ability to think, plaintiff testified that his anxiety precludes him from effectively managing stressful situations because the anxiety causes him to experience "sweats, chest pains, blurry vision and stomach pains."  (Doc. 35-1, Pl. Dep. at 43-45, 113).[6]  Plaintiff further testified that he experiences anxiety episodes daily or every other day.  (<u>Id.</u> at 114).  Moreover, plaintiff's treating physician recommended individual counseling, which plaintiff pursued with a local counselor.  (<u>Id.</u> at 118-19).

Plaintiff's past interactions with his supervisor also demonstrate how his anxiety substantially limited his ability to think.  For example, plaintiff testified that when his supervisor "jump[ed] up out of his desk and jump[ed] in front of me and talk[ed] to me three inches [away] . . . screaming at me," that would trigger his anxiety, substantially limiting his ability to think and effectively

---

[6]  The page numbers in citations to depositions in this memorandum are the page numbers of the actual deposition, not the court's electronic filing page number.

communicate with his supervisor.  (Id. at 21, 119-20).  Thus, viewing the

evidence in the light most favorable to the plaintiff, a reasonable jury could

conclude that plaintiff's anxiety substantially limits the major life activity of

thinking, and therefore, plaintiff is disabled under the ADA.

### 2.  Adverse employment action

The Union next argues plaintiff cannot establish the third element of his

*prima facie* case–that he suffered an adverse employment decision as a result

of discrimination.  An adverse employment action is "an action by an employer

that is 'serious and tangible enough to alter an employee's compensation,

terms, conditions, or privileges of employment.'"  Storey v. Burns Int'l Sec.

Servs., 390 F.3d 760, 764 (3d Cir. 2004) (quoting Cardenas v. Massey, 269

F.3d 251, 263 (3d Cir. 2001)).  The Third Circuit Court of Appeals has noted

that "[o]bviously, something less than a discharge could be an adverse

employment action."  Jones, 198 F.3d at 411.  For example, the court has held

that transfers and demotions may demonstrate adverse employment actions.

Id. at 411-12.

Plaintiff contends that the Union's decision denying him leave from the

"sick day bank" establishes an adverse employment action resulting from his

disability.  (SOF ¶¶ 34, 40).  As previously stated, plaintiff submitted an

application for sick bank time on November 15, 2011, requesting thirty (30) days of leave to obtain counseling for his anxiety.  (SOF ¶¶ 17-18).  The sick bank committee met on December 9, 2011.  (SOF ¶ 24).  The committee, however, did not approve plaintiff's application.  (SOF ¶ 26).  Instead, the committee directed plaintiff to provide additional information regarding his need for leave and ability to currently perform his work duties.  (SOF ¶ 27).

On December 12, 2011, plaintiff submitted a second application for sick bank time.  (SOF ¶ 28).  Plaintiff's second application requested thirty (30) days of leave to obtain counseling for his anxiety.  (SOF ¶ 29).  On December 20, 2011, the committee met and denied plaintiff's second application for sick bank time.  (SOF ¶ 34).  Viewing the evidence in the light most favorable to the plaintiff, a reasonable factfinder could conclude that the Union's decision denying him sick bank leave to treat his anxiety adversely altered the terms, conditions or privileges of his employment.

Accordingly, genuine issues of material fact exist regarding whether plaintiff is disabled under the ADA and suffered an adverse employment action as a result of discrimination.  Ergo, the court will employ the rest of the balancing test.

11

**B.  Defendant's nondiscriminatory explanation**

Once the plaintiff establishes a *prima facie* case, "the burden of production shifts to the employer to identify a legitimate non-discriminatory reason for the adverse employment action."  Smith v. City of Allentown, 589 F.3d 684, 689-90 (3d Cir. 2009).  This burden is "'relatively light'" and is satisfied if the employer provides evidence, which, if true, would permit a conclusion that it took the adverse employment action for a non-discriminatory reason.  Tomasso v. Boeing Co., 445 F.3d 702, 706 (3d Cir. 2006) (quoting Fuentes, 32 F.3d at 763); see also Lichtenstein v. Univ. of Pittsburgh Med. Ctr., 691 F.3d 294, 302 (3d Cir. 2012) (describing this step as a "minimal burden").  The Union has clearly met its burden here.

The Union asserts it denied plaintiff's request for sick bank leave because the plaintiff failed to meet the CBA's stated guidelines for the leave. As previously stated, the Union denied plaintiff sick bank leave in December 2011.  (SOF ¶ 34).  The Union provides the following two reasons for its denial.  First, plaintiff requested thirty (30) days of sick bank leave to use in November or December 2011.  (SOF ¶¶ 17-18, 28-29).  Plaintiff, however, continued working during November and December 2011.  Because plaintiff continued working and the sick bank policy requires that a Union member is

12

"unable to perform his assigned duties", the Union argues plaintiff was ineligible for sick bank leave.  (SOF ¶¶ 9, 25).

The Union also denied plaintiff's request for sick bank time because plaintiff failed to possess the necessary hours of sick time to be eligible for the sick bank program.  Pursuant to the sick bank policy, plaintiff needed sixty-four (64) hours of accumulated sick time, or to provide acceptable evidence justifying the lack of qualifying time to be eligible for the sick bank program. (SOF ¶ 23).  At the time of his application, plaintiff only had four and one-half (4½) hours of accumulated sick time.  (Id.)  Plaintiff's failure to possess the requisite number of sick hours and failure to explain why he lacked this qualifying time support the Union's decision denying plaintiff sick bank time. (Id.)  Therefore, the undisputed record evidence establishes a legitimate, non-discriminatory reason for plaintiff's termination.

## C. Pretext

Having established a legitimate non-discriminatory reason for plaintiff's termination, the burden of production shifts back to plaintiff to "provide evidence from which a factfinder could reasonably infer that the employer's proffered justification is merely a pretext for discrimination."  Burton v. Teleflex Inc., 707 F.3d 417, 426 (3d Cir. 2013); see also Doe v. C.A.R.S. Prot. Plus,

13

Inc., 527 F.3d 358, 364 (3d Cir. 2008) (explaining that, "to defeat a motion for summary judgment, [the plaintiff] must show that the employer's articulated reason was a pretext for intentional discrimination").

To establish pretext, plaintiff must "point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Fuentes, 32 F.3d at 764. The first Fuentes prong is relevant here.

Under this test, a plaintiff "must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence." Id. at 765 (citation and internal question marks omitted). In so doing, he must "do more than show that [the defendant] was wrong or mistaken in deciding to lay him off. He must present evidence contradicting the core facts put forward by the employer as the legitimate reason for its decision." Tomasso, 445 F.3d at 706 (internal citation and quotation marks omitted); see also Keller v. Orix Credit Alliance, Inc., 130 F.3d 1101, 1109 (3d Cir. 1997) (explaining that a plaintiff

14

must demonstrate that the employer's proffered reason was wrong, "but that it was so plainly wrong that it cannot have been the employer's real reason").

In the instant case, the Union argues that it denied plaintiff sick bank time because plaintiff continued working during the time he requested to take off and did not possess the requisite number of hours to be eligible for the program or provide an explanation regarding the reasons for his failure to possess the required number of hours.

Plaintiff, however, has presented evidence demonstrating that these reasons are potentially pretextual.  For example, plaintiff submits minutes from the December 9, 2011 sick bank committee meeting to refute the Union's contention that he needed a specific amount of sick time to qualify for the leave bank.  The minutes state that, "Paula made a motion to table the request to gather more information on why time is needed."  (Doc. 35-4, sick bank meeting minutes dated 12/9/11 at 45).  The committee voted to table plaintiff's application.  (Id.)  While one committee member voted not to table the matter and instead directly vote down plaintiff's sick bank application on the merits for failure to meet the requirements of available time, the committee took no action regarding whether plaintiff possessed the required leave time to qualify for the sick bank.  As such, a genuine issue of fact exists pertaining to whether

15

the Union's non-discriminatory reason for denying plaintiff sick bank time,

failure to possess the minimum number of hours to be eligible, is pretext for

discrimination.

Moreover, plaintiff's evidence could demonstrate that the Union's

reliance on the fact he continued to work while his sick bank requests were

pending are pretext for disability discrimination.  As previously stated, plaintiff

first applied for sick leave on November 15, 2011.  (SOF ¶ 22).  Plaintiff

requested one (1) month of leave to obtain counseling with a return to work

date of December 12, 2011.  (SOF ¶ 18).  The sick bank committee, however,

failed to meet and review his request until December 9, 2011– twenty-four (24)

days after his request.  (SOF ¶ 24).  While the committee did indeed review

plaintiff's request on December 9, 2011, the committee tabled plaintiff's

application to obtain more information.  (SOF ¶ 25).

Plaintiff submitted a second application for sick bank time on December

12, 2011.  (SOF ¶ 28).  Plaintiff again requested one (1) month of leave to

obtain mental health counseling with a return to work date of January 2, 2012.

(SOF ¶ 29).  Plaintiff continued working while his second sick bank application

remained pending with the committee.  (SOF ¶ 32).  The sick bank committee

reviewed and denied plaintiff's sick bank application on December 20, 2011, in

16

part because plaintiff worked while his sick bank applications were pending.

(SOF ¶ 34).  In short, the committee denied plaintiff leave and now wishes to

benefit from the fact plaintiff evidently postponed his mental health treatment

and worked.

A reasonable juror, however, could concluded that, unlike a broken leg

or scheduled treatments, mental health treatment only necessitates its

commencement on a certain date and time in the rarest of cases pertaining to

voluntary or involuntary commitments at in-patient treatment facilities.

Individuals living with mental health disabilities manage their symptoms until

they create  an environment conducive to obtaining effective mental health

treatment.  One such factor is knowing that the individual will be able to obtain

income while receiving treatment.  In this way, the individual can focus solely

on understanding his or her disability and how to better manage its symptoms.

Stated differently, the individual need not worry about paying the rent,

mortgage, utilities or other financial matters while receiving treatment.  Instead,

the individual solely focuses on his or her treatment goals.

Finally, the court cannot weigh the probative value of plaintiff's

competent evidence and compare it to the Union's reasons for denying plaintiff

sick bank leave.  Rather, at the summary judgment stage, reasonable

inferences must be drawn in favor of the nonmoving party.  Int'l Raw Materials, Ltd., 898 F.2d at 949.

Viewing plaintiff's evidence in the light most favorable to him, genuine issues of material fact exist regarding whether the Union's proffered reason for denying plaintiff sick bank time is pretext for disability discrimination.  Thus, plaintiff has provided sufficient evidence which, if credited by the jury, could establish disability discrimination in the instant case.  The Union's motion for summary judgment on plaintiff's disability discrimination claim will thus be denied.

**Conclusion**

Based upon the above reasoning, the court will deny the Union's motion for summary judgement on plaintiff's disability discrimination claims under the ADA and PHRA.  An appropriate order follows.


**Date:**   09/14/2016                          **s/ James M. Munley**
                                                **JUDGE JAMES M. MUNLEY**
                                                **United States District Court**

18