**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DON WILKIE,** | : | **No. 3:14cv462** |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| **v.** | : | |
| | : | |
| **LUZERNE COUNTY and** | : | |
| **AMERICAN FEDERATION OF STATE,** | : | |
| **COUNTY, AND MUNICIPAL** | : | |
| **EMPLOYEES,** | : | |
| **Defendants** | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## MEMORANDUM

Plaintiff Don Wilkie (hereinafter "plaintiff") asserts that Defendant Luzerne County (hereinafter "the County") violated his rights under the Americans with Disabilities Act, 42 U.S.C. §§ 12101, *et seq.* (hereinafter "ADA" or "the Act") and the Pennsylvania Human Relations Act, 43 PA. STAT. ANN. § 951, *et seq.* (hereinafter "PHRA") by terminating his employment. Before the court for disposition is the County's motion for summary judgment. (Doc. 36). For the reasons that follow, the court will deny the County's motion.

## Background

Luzerne County employed plaintiff as a 911 dispatcher from June 2002 until his termination on May 22, 2012. (Doc. 37, Def. Luzerne Cnty.'s Statement of Undisputed Material Facts (hereinafter "SOF") ¶ 3). This case

arises out of the County's decision to terminate plaintiff's employment. (SOF ¶¶ 3, 37).[1]

Plaintiff's primary care physician diagnosed him with diabetes in 2009 and an anxiety disorder in 2010.  (SOF ¶ 12).  Plaintiff testified that his anxiety precluded him from effectively managing stressful situations because the anxiety caused him to experience "sweats, chest pains, blurry vision and stomach pains."  (SOF ¶ 20).  Plaintiff's disabilities also caused short-term memory loss, neuropathy issues, concentration loss, loss of eyesight, and problems with his pancreas, liver, and kidneys.  (SOF ¶ 17). Nevertheless, he continued to work for the County as a 911 dispatcher. (SOF ¶ 20).  Moreover, on at least one occasion, plaintiff verbally asked his supervisor, John Emmert, to limit his mandatory overtime work shifts to eight (8) hours instead of twelve (12) to sixteen (16) hours.  (SOF ¶ 22; Doc. 46, Pl.'s Resp. ¶ 22).

On May 7, 2012, the County suspended plaintiff without pay for mishandling a 911 call, which led to an individual's death.  (SOF ¶ 8).  The County claims that plaintiff's failure to follow procedure caused the death. (Id.)  On May 9, 2012, the County held a formal hearing at which it presented evidence of the mishandled call and plaintiff's poor work history.

---

[1] We cite to the County's SOF for statements which plaintiff generally agrees with in his response.  (Doc. 46).

(SOF ¶ 10).  The County afforded Plaintiff the opportunity, through representation from the Union, to explain his alleged substandard work performance.  (Id.)  On May 22, 2012, the County terminated plaintiff's employment.  (Id.)

On March 12, 2014, plaintiff filed an eight-count complaint.  Relevant to the instant motion, the complaint alleges that the County discriminated against plaintiff because of his disability, retaliated against him for requesting a reasonable accommodation, and failed to accommodate him, all in violation of the ADA and PHRA.  (Doc. 1, Compl. ¶¶ 58-69).  At the conclusion of discovery, the County moved for summary judgment on all claims.  The parties have briefed their respective positions and the matter is ripe for disposition.

**Jurisdiction**

As plaintiff brings suit pursuant to the ADA, 42 U.S.C. §§ 12101, *et seq.*, we have federal question jurisdiction.  See 28 U.S.C. § 1331. ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").  We have supplemental jurisdiction over plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

**Standard of Review**

Granting summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  See Knabe v. Boury, 114 F.3d 407, 410 n.4 (3d Cir. 1997) (citing FED. R. CIV. P. 56(c)).  "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In considering a motion for summary judgment, the court must examine the facts in the light most favorable to the party opposing the motion.  Int'l Raw Materials, Ltd. v. Stauffer Chem. Co., 898 F.2d 946, 949 (3d Cir. 1990).  The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the nonmoving party.  Anderson, 477 U.S. at 248.  A fact is material when it might affect the outcome of the suit under the governing law.  Id.  Where the nonmoving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by establishing that the

4

evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the nonmovant's burden of proof at trial.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories demonstrating that there is a genuine issue for trial.  Id. at 324.

**Discussion**

The County moves for summary judgment on plaintiff's disability discrimination, failure to accommodate, and retaliation claims under the ADA and PHRA.  We will address each in turn.[2]

**I. Disability Discrimination**

The County first moves for summary judgment on plaintiff's disability discrimination claim.  Pursuant to the ADA, an employer cannot discriminate against a qualified individual with a disability because of his disability in regard to his employment.  42 U.S.C. § 12112(a).  A plaintiff may assert an ADA disability discrimination claim with direct or

---

[2] Our analysis under the ADA applies equally to plaintiff's claims under the PHRA.  Gafliardo v. Connaught Labs., Inc., 311 F.3d 565, 568 n.2 (3d Cir. 2002) (citing Kelly v. Drexel Univ., 94 F.3d 102, 105 (3d Cir.1996)).

circumstantial evidence.  Here, plaintiff argues that circumstantial evidence establishes his ADA disability discrimination claim.

Where, as here, the complaining party relies upon circumstantial evidence to support a disability discrimination claim, the Third Circuit Court of Appeals has approved the use of the burden-shifting framework announced in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 782, 802 (1973).  <u>Shiring v. Runyon</u>, 90 F.3d 827, 831 (3d Cir. 1996).  First, a plaintiff seeking recovery pursuant to the ADA must establish a *prima facie* case of discrimination by demonstrating that: (1) he is disabled within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) he has suffered an otherwise adverse employment decision as a result of discrimination.  <u>Id.</u>

Once the plaintiff establishes this *prima facie* case, the burden of production shifts to the employer to "proffer a legitimate, non-discriminatory reason for the adverse employment decision."  <u>Abrahamson v. William Patterson Coll.</u>, 260 F3d 265, 281-82 (3d Cir. 2001).  An employer need only introduce "evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision."  <u>Fuentes v. Perskie</u>, 32 F.3d 759, 763 (3d Cir. 1994).  "The

employer need not prove that the tendered reason **actually** motivated its behavior, as throughout this burden-shifting paradigm the ultimate burden of proving intentional discrimination always rests with the plaintiff." Id. (emphasis in original).

Should the employer meet this burden, the burden of production shifts back to the plaintiff to establish that a jury "could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating factor or determinative cause of the employer's action." Id. at 764. The court will address each step of this burden-shifting framework in turn.

### A.  Plaintiff's *prima facie* case

A plaintiff establishes a *prima facie* case of ADA disability discrimination when he demonstrates that: (1) he is disabled within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) he has suffered an otherwise adverse employment decision as a result of discrimination. Shiring, 90 F.3d at 831. Here, the County only challenges whether plaintiff is disabled under the ADA.

Under the ADA, a "disability" is "(A) a physical or mental impairment that substantially limits one or more major life activities . . .; (B) a record of

such impairment; or (C) being regarded as having such an impairment[.]"

42 U.S.C. § 12102(1).  Federal regulations provide that "major life activities

include, but are not limited to, caring for oneself, performing manual tasks,

seeing, hearing, eating, sleeping, walking, standing, lifting, bending,

speaking, breathing, learning, reading, concentrating, thinking,

communicating, and working."  42 U.S.C. § 12102(2)(A).  "Major life

activities" also include "the operating of a major bodily function, including

but not limited to . . . neurological processes."  42 U.S.C. § 12102(2)(B).

In the instant matter, plaintiff claims that his anxiety substantially

limited the major life activity of thinking.  Thinking is a major life activity

under the ADA.  42 U.S.C. § 12102(2)(A); Taylor v. Phoenixville Sch. Dist.,

184 F.3d 296, 307 (3d Cir. 1999) (stating that "thinking is a major life

activity" under the ADA).  Regarding how plaintiff's anxiety substantially

limited his ability to think, plaintiff testified that his anxiety precludes him

from effectively managing stressful situations because the anxiety causes

him to experience "sweats, chest pains, blurry vision and stomach pains."

(Doc. 38-1, Pl. Dep. (hereinafter "Pl. Dep.") at 43-45).[3]  Plaintiff further

testified that he experiences anxiety episodes daily or every other day.  (Id.

---

[3] The page numbers in citations to depositions in this memorandum are the page numbers of the actual deposition, not the court's electronic filing page number.

at 114).  Moreover, plaintiff's treating physician recommended individual counseling, which plaintiff pursued with a local counselor.  (Id. at 118-19).

Plaintiff's past interactions with his supervisor also demonstrate how his anxiety substantially limited his ability to think.  For example, plaintiff testified that his supervisor, John Emmert, triggered his anxiety when he "jump[ed] up out of his desk and jump[ed] in front of me and talk[ed] to me three inches [away] . . . screaming at me."  (Id. at 119-20).  His anxiety then substantially limited his ability to think and effectively communicate with Mr. Emmert.  (Id.)  Thus, viewing the evidence in the light most favorable to the plaintiff, a reasonable jury could conclude that plaintiff's anxiety substantially limits the major life activity of thinking, and therefore, plaintiff is disabled under the ADA.

## B.  Defendant's nondiscriminatory explanation

Once the plaintiff establishes a *prima facie* case, "the burden of production shifts to the employer to identify a legitimate non-discriminatory reason for the adverse employment action."  Smith v. City of Allentown, 589 F.3d 684, 689-90 (3d Cir. 2009).  This burden is "relatively light" and is satisfied if the employer provides evidence, which, if true, would permit a conclusion that it took the adverse employment action for a non-discriminatory reason.  Tomasso v. Boeing Co., 445 F.3d 702, 706 (3d Cir.

2006) (quoting <u>Fuentes</u>, 32 F.3d at 763); <u>see also</u> <u>Lichtenstein v. Univ. of Pittsburgh Med. Ctr.</u>, 691 F.3d 294, 302 (3d Cir. 2012) (describing this step as a "minimal burden").  The County has clearly met its burden here, and plaintiff actually "concedes that Defendant has articulated a purported reason." (Doc. 45, Pl. Br. in Opp'n at 15).

Specifically, plaintiff's violation of procedures that directly led to the death of an individual calling Luzerne 911 for aid coupled with several undisputed past instances of suspension and reprimand support the County's decision to terminate plaintiff's employment.  Therefore, the record evidence establishes a legitimate, nondiscriminatory reason for plaintiff's termination.

### C.  Pretext

Having established a legitimate reason for plaintiff's termination, the burden of production shifts back to plaintiff to "provide evidence from which a factfinder could reasonably infer that the employer's proffered justification is merely a pretext for discrimination." <u>Burton v. Teleflex, Inc.</u>, 707 F.3d 417, 426 (3d Cir. 2013); <u>see also</u> <u>Doe v. C.A.R.S. Prot. Plus, Inc.</u>, 527 F.3d 358, 364 (3d Cir. 2008) (explaining that, "to defeat a motion for summary judgment, [the plaintiff] must show that the employer's articulated reason was a pretext for intentional discrimination").

To establish pretext, a plaintiff must "point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." <u>Fuentes</u>, 32 F.3d at 764. The first <u>Fuentes</u> prong is relevant here.

Under this test, a plaintiff "must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence." <u>Id.</u> at 765 (citation and internal question marks omitted).  In so doing, he must "do more than show that [the defendant] was wrong or mistaken in deciding to lay him off.  He must present evidence contradicting the core facts put forward by the employer as the legitimate reason for its decision." <u>Tomasso</u>, 445 F.3d at 706 (internal citation and quotation marks omitted); <u>see also</u> <u>Keller v. Orix Credit Alliance, Inc.</u>, 130 F.3d 1101, 1109 (3d Cir. 1997) (explaining that a plaintiff must demonstrate that the employer's proffered reason was wrong, "but that it was so plainly wrong that it cannot have been the employer's real reason").

In the instant case, the County argues that it terminated plaintiff's employment because plaintiff mishandled a 911 call, which led to an individual's death.  The County also asserts that plaintiff's poor work history necessitated his termination.

Plaintiff, however, contends that the County's grounds for his termination are pretextual for several reasons.  First, plaintiff avers that John Emmert, his supervisor, terminated his employment.  (Pl. Dep. at 21). Emmert, however, is the same individual who "dropped [plaintiff's] doctor's note in the trash can" after plaintiff presented him with the note requesting a shorter work shift due to his disability.  (Id. at 209-12).

Second, plaintiff asserts that another County employee, Herman Hughes, "sent a ambulance [sic] to a wrong location" resulting in a patient's death.  (Id. at 109).  Instead of terminating Hughes, who purportedly "did the same thing" as plaintiff, plaintiff avers that Hughes received a mere five-day suspension.  (Id.)

Finally, citing the collective bargaining agreement between the County and the Union, plaintiff argues that workplace discipline is restricted to six months after a verbal reprimand and one year after a written reprimand.[4]  Because plaintiff's last written reprimand was on August 14,

---

[4] The collective bargaining agreement provides, in relevant part:

2007, and his last oral reprimand was on December 8, 2008, plaintiff contends that the County cannot rely on plaintiff's poor work history as grounds for termination.

Based on the foregoing reasons, a reasonable factfinder could conclude that Emmert terminated plaintiff's employment because he did not want to work with an individual with a mental health disability. Consequently, at this point, the court cannot weigh the probative value of plaintiff's competent evidence and compare it to the County's reasons for terminating his employment.  Rather, at the summary judgment stage, reasonable inferences must be drawn in favor of the nonmoving party.  Int'l Raw Materials, Ltd., 898 F.2d at 949.

---

> Oral reprimand from immediate supervisor to employee concerning the violation.  Date and overview of the violation will be kept on file by the immediate supervisor and will not be placed in the employee's permanent record for longer than six months.
> . . .
> Written reprimand will be given to employee.  Supervisor will put in writing the nature of complaint against the employee and furnish copies to the Office of Budget and Personnel and the AFSCME Local Steward.  It should be noted that the employee also can respond to the written reprimand.  Said reprimand shall be removed from the employee's file after one year of filing as long as no other related disciplinary action has been filed in that time period.

(Pl. Dep. at 225-26).

Viewing plaintiff's evidence in the light most favorable to him, genuine issues of material fact exist regarding whether the County's proffered reasons for terminating plaintiff's employment are pretext for disability discrimination.  In particular, plaintiff has presented seemingly unrefuted testimony that the County merely suspended another 911 dispatcher for committing the same workplace error as plaintiff, while the County terminated plaintiff.  Moreover, plaintiff argues that the County is not allowed to discipline him for past workplace transgressions under the plain language of the collective bargaining agreement.  Thus, plaintiff has provided sufficient evidence which, if credited by the jury, could establish pretext in the instant case.  The County's motion for summary judgment on plaintiff's disability discrimination claim will thus be denied.

## II. Failure to Accommodate

Plaintiff next asserts a failure to accommodate claim under the ADA. The ADA provides that an employer "discriminates" against a qualified individual with a disability when the employer "does not mak[e] reasonable accommodations to the known physical or mental limitations of the individual unless the [employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business of the [employer]." Williams v. Phila. Hous. Auth. Police Dept., 380 F.3d 751, 761

(3d Cir. 2004) (internal citations and quotations omitted); 42 U.S.C.

§ 12112(b)(5)(A).

To determine the appropriate reasonable accommodation, the ADA

requires that an employer and employee engage in the "interactive

process."[5]  Specifically, "[o]nce a qualified individual with a disability has

requested provision of a reasonable accommodation, the employer must

make a reasonable effort to determine the appropriate accommodation.

The appropriate reasonable accommodation is best determined through a

flexible, interactive process that involves both the employer and the

[employee] with a disability."  29 C.F.R. pt. 1630, app. § 1630.9.  Both

parties bear responsibility in this process.  Taylor, 184 F.3d at 312.

To establish that the County did not properly engage in the

"interactive process," plaintiff must demonstrate that: "(1) the County knew

about plaintiff's disability; (2) plaintiff requested accommodations or

assistance for his disability; (3) the County did not make a good faith effort

to assist plaintiff in seeking accommodations; and (4) plaintiff could have

been reasonably accommodated but for the County's lack of good faith."

Conneen v. MBNA Am. Bank, N.A., 334 F.3d 313, 330-31 (3d Cir. 2003).

---

[5] The phrase "interactive process" describes the employer's duty to determine with a disabled employee if a reasonable accommodation exists that would qualify the employee to perform the essential functions of his or her job.  Taylor, 184 F.3d at 317; 29 C.F.R. § 1630.2(o)(3).

In the instant matter, the court has previously determined that plaintiff suffered from a disability based upon anxiety.  Additionally, the County provides no argument regarding whether it made a good faith effort to assist plaintiff in seeking accommodations.  Thus, the court must determine whether the County knew about plaintiff's disability, whether plaintiff requested accommodations or assistance for his disability, and whether plaintiff could have been reasonably accommodated but for the County's lack of good faith.

### A.  Knowledge of disability

First, the County contends that plaintiff has not established that it had notice of any such disability.  Plaintiff argues that the County became aware of his disability, anxiety, when he spoke to his supervisor three times about a possible accommodation, that is, limiting his mandatory overtime shifts to eight (8) hours.  He further avers that the County received notice of his disability when he presented a doctor's note to his supervisor.  With respect to an employer's knowledge of its employee's disability, "[w]hat matters under the ADA are not formalisms about the manner of the request, but whether the employee or a representative for the employee provides the employer with enough information that, under the circumstances, the employer can be fairly said to know of both the disability

16

and desire for an accommodation." Taylor, 184 F.3d at 313. "What information the employee's initial notice must include depends on what the employer knows[,]" and "[e]mployers cannot assume employees are disabled and need accommodations." Id.

Here, the County maintains that although plaintiff verbally requested that his mandatory overtime shifts be limited to eight (8) hours, plaintiff's failure to file any documentation requesting an accommodation, as required by the County, falls short of placing the County on notice of any alleged disabilities. At the same time, however, the County concedes that plaintiff similarly made it aware of his other potential disability, diabetes, on prior occasions. (SOF ¶ 21). Notwithstanding the informal nature of plaintiff's verbal requests of the County to accommodate his diabetes, the County accommodated plaintiff's diabetes by providing a special break schedule for plaintiff so that he could check his insulin levels. (Id.) Ultimately, the County's concession that plaintiff not only made his supervisor aware of his anxiety disorder, but that he also requested that his mandatory overtime shifts be limited to eight hours (8) based on this disorder, is sufficient to establish that the County had knowledge of plaintiff's disability.

### B.  Request for accommodation or assistance

Next, the County contends that plaintiff failed to request an accommodation.  It is well-established that, "while the notice [of a desire for an accommodation] does not have to be in writing, be made by the employee, or formally invoke the magic words 'reasonable accommodation,' the notice nonetheless must make clear that the employee wants assistance for his or her disability."  Jones v. United States Parcel Serv., 214 F.3d 402, 408 (3d Cir. 2000) (quoting Taylor, 184 F.3d at 313)).  "In other words, the employer must know of both the disability and the employee's desire for accommodations for that disability."  Taylor, 184 F.3d at 313.

Here, it is undisputed that plaintiff not only made his supervisor aware of his anxiety disorder, but that he also requested that his mandatory overtime shifts be limited to eight (8) hours based on that disorder.  (SOF ¶ 22).  While this fact alone is, at this juncture, sufficient for plaintiff to establish that he requested an accommodation from the County, plaintiff has further supported his position with testimony that he presented his supervisor with a doctor's note requesting an accommodation, but that the same supervisor destroyed the note.  (Pl. Dep. at 209-11).  Viewing this

evidence in the light most favorable to plaintiff, it is clear that that plaintiff requested an accommodation based on his disability.

### C. Reasonable accommodation

The next "interactive process" element requires plaintiff to establish that he could have been reasonably accommodated but for the County's lack of good faith.  Plaintiff argues that a reasonable accommodation is possible because he simply requested a limitation of his overtime mandate, namely to work eight (8) hour shifts instead of twelve (12) or sixteen (16) hour shifts.  The County offers no direct response to plaintiff's assertion. Rather, the County defers to its argument, explained above, that plaintiff's lone, undocumented request failed to provide notice of his disability as a matter of law.

The issue of reasonable accommodation is a question for the trier of fact.  Turner v. Hershey Chocolate U.S., 440 F.3d 604, 614 (3d Cir. 2006). In deciding whether a genuine issue of material fact exists regarding the reasonableness of the requested accommodation, the court must first examine whether the plaintiff has made a *prima facie* showing that his proposed accommodation is possible.  Id.  If he has done so, the burden then shifts to the defendant to prove, as an affirmative defense, that the

accommodation requested by the plaintiff is unreasonable or would cause undue hardship.  Id.

In the matter *sub judice*, plaintiff easily satisfies his *prima facie* burden.  Much like plaintiff's previous requests for accommodations based on his diabetes, which the County obliged, plaintiff's request for limited mandatory overtime does not involve limiting plaintiff's job functions or otherwise altering the environment in which plaintiff works.  Additionally, Plaintiff's request did not contemplate a reduction in his overall work hours.  Rather, plaintiff merely requested a limitation on his overtime hours worked in a single shift.  Thus, the burden shifts to the County to establish, as an affirmative defense, that plaintiff's requested accommodation is unreasonable or would cause the County an undue hardship.

The ADA considers an unreasonable accommodation request one that requires an employer to reallocate the essential functions of a position.  Deane v. Pocono Med. Ctr., 142 F.3d 138, 146-47 (3d Cir. 1998).  Further, an "undue hardship" is "an action requiring significant difficulty or expense, when considered in light of [a series of factors]."[6]  42 U.S.C. § 12111(10)(A); 29 C.F.R. § 1630.2(p).  In making a claim of undue

---

[6] Among the factors to be considered are "the effect on expenses and resources, or the impact otherwise of such accommodation upon the operation of the facility."  42 U.S.C. § 12111(10)(B).

hardship, the employer is required to provide sufficient evidence that the reasonable "accommodation will, in fact, cause it undue hardship;" it is not enough for the employer simply to assert that it will suffer undue hardship. Turner, 440 F.3d at 614; 29 C.F.R. § 1630.15(d).

The County has not argued that plaintiff's request for an accommodation was in any way unreasonable or would otherwise create an undue hardship. Viewing the evidence in plaintiff's favor, the court cannot conclude as a matter of law that plaintiff's requested accommodation would impose an undue hardship on the County.

In short, genuine issues of material fact exist regarding whether the County made a good faith effort to assist plaintiff in seeking accommodations and whether the County could have reasonably accommodated plaintiff but for the County's lack of good faith. Furthermore, the questions of whether plaintiff can perform the essential functions of his position with reasonable accommodation and whether plaintiff's proposed accommodation is unreasonable or places an undue hardship on the County are open questions of material fact that must be decided at trial. Thus, the court will deny the County's motion for summary judgment pertaining to plaintiff's failure to accommodate claim.

**III.  Retaliation**

Finally, the County moves for summary judgment on plaintiff's ADA retaliation claim.  A plaintiff may use the McDonnell Douglas burden-shifting framework to establish an ADA retaliation claim.  Williams, 380 F.3d at 760.  Under this burden-shifting framework: (1) the plaintiff first bears the burden of establishing a *prima facie* case of retaliation; (2) the burden of production next shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse action; and (3) the burden of production shifts back to the plaintiff to establish that the defendant's proffered reason is pretexual.  Shellenberger v. Summit Bancorp, Inc., 318 F.3d 183, 187 (3d Cir. 2003) (citing McDonnell Douglas Corp., 411 U.S. at 802-05).  We address the steps of this burden-shifting framework in turn.

**A.  Plaintiff's *prima facie* case**

To establish a *prima facie* case of retaliation under the ADA, a plaintiff must demonstrate: "(1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action."  Krouse v. Am. Sterilizer Co., 126 F.3d 494, 500 (3d Cir. 1997).  Here, the County only challenges whether plaintiff engaged in a protected employee activity

and the existence of a causal connection between the protected activity and the employer's adverse action.

### 1.  Protected employee activity

As previously discussed, plaintiff requested an accommodation based on his anxiety disorder to limit his mandatory overtime.  The right to request an accommodation in good faith is a protected activity under the ADA. Shellenberger, 318 F.3d at 191.  Thus, the court will find that plaintiff engaged in a protected activity.

### 2.  Causal connection

Similarly, using facts already referenced, plaintiff has established a causal connection between his request for an accommodation and his termination.  Ordinarily, a causal connection may be shown by "(1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link."  Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007).  The Third Circuit has also held,

> In the absence of such a close temporal proximity, we consider the circumstances as a whole, including any intervening antagonism by the employer, inconsistencies in the reasons the employer gives for its adverse action, and any other evidence suggesting that the employer had a retaliatory animus when taking the adverse action.

Daniels v. Sch. Dist. of Phila., 776 F.3d 181, 196 (3d Cir. 2015) (internal citations and quotation marks omitted).

Here, the County argues that plaintiff has failed to establish any facts that would show or produce a reasonable inference that plaintiff's informal request for an accommodation, possibly made in January of 2012, was in any way related to his termination of employment in May of 2012.  We disagree.

Although plaintiff's suspension from employment and ultimate termination occurred approximately four (4) months after his request for an accommodation, the County's inconsistencies in the reasons given for plaintiff's termination from employment may support plaintiff's claim of retaliation.  Specifically, while the County maintains that it terminated plaintiff's employment as a result of call mishandling, plaintiff testified that another County employee "sent a ambulance [sic] to a wrong location" resulting in a patient's death.  (Pl. Dep. at 109).  Instead of terminating this other employee, who purportedly "did the same thing" as plaintiff, plaintiff testified that the other employee received a mere five-day suspension.  (Id.)

Additionally, plaintiff produced evidence suggesting the County's retaliatory animus.  In particular, plaintiff testified that when he presented his supervisor with a doctor's note requesting an accommodation based on

24

his disability, plaintiff's supervisor destroyed the note and threw it in the trash.  These circumstances, considered as a whole, are sufficient to establish a causal connection between plaintiff's request for an accommodation and his termination.

Viewing the evidence in the light most favorable to the plaintiff, a reasonable jury could conclude that plaintiff has sufficiently established a *prima facie* claim of retaliation under the ADA.  As such, we must continue the McDonnell Douglas analysis.

### B.  Defendant's nondiscriminatory explanation

As explained above, once the plaintiff establishes a *prima facie* case, "the burden of production shifts to the employer to identify a legitimate non-discriminatory reason for the adverse employment action."  Smith, 589 F.3d at 689-90.  Here, we have already concluded that plaintiff's violation of procedures that directly led to the death of an individual calling Luzerne 911 for aid coupled with several undisputed past instances of suspension and reprimand support the County's decision to terminate plaintiff's employment.  Therefore, the undisputed record evidence establishes a legitimate, nondiscriminatory reason for plaintiff's termination.

### C. Pretext

Once again, the County having established a legitimate reason for plaintiff's termination, the burden of production shifts back to plaintiff to "provide evidence from which a factfinder could reasonably infer that the employer's proffered justification is merely a pretext for discrimination." Burton, 707 F.3d at 426.  Because the County's arguments on this issue mirror its arguments pertaining to plaintiff's ADA disability discrimination claim, the analysis above is equally applicable here.  Therefore, we will find that genuine issues of material fact exist regarding whether the County's proffered reasons for terminating plaintiff's employment are pretext for disability retaliation.  The County's motion for summary judgment on plaintiff's disability retaliation claim will thus be denied.

### Conclusion

Based upon the above reasoning, the court will deny the County's motion for summary judgment on plaintiff's disability discrimination, failure to accommodate, and retaliation claims under the ADA and PHRA. Genuine issues of material fact exist regarding whether the County discriminated against, failed to accommodate, and retaliated against

plaintiff.  An appropriate order follows.


Date: <u>September 14, 2016</u>          <u>s/ James M. Munley</u>
                                      **JUDGE JAMES M. MUNLEY**
                                      **United States District Court**